CANNON et al. v. McCOMB, County Judge of Jack County, et al. (No. 11173.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 18, 1924. Rehearing Denied Nov. 29, 1924. Writ of Error Dismissed for Want of Jurisdiction Jan. 14, 1925.)

1. Injunction &#8665;122—Allegations in unverified answers not looked to in aid of general demurrer.

In suit for injunction, where answer and certain pleas in intervention contained general demurrer and special exceptions to sufficiency of petition, facts alleged in such pleadings could not be looked to in aid of general demurrer or in support of court's denial of relief, where such pleadings were not verified, while petition was duly verified.

2. Highways &#8665;130½, New, vol. 12A Key-No. Series—Commissioners' representations for campaign purposes prior to vote on bond issue held no basis for injunctive relief.

Representations for campaign purposes that funds from proposed bond issue would be spent on highway No. 25 will not afford basis for restraining commissioners' court from expending the funds on another highway, though voters for bond issue believed intention was to improve highway No. 25, where proposition actually voted on was raising of funds for hardsurfaced roads within county.

3. Highways &#8665;130½, New, vol. 12A Key-No. Series—Every reasonable inference must be overcome by petition for injunctive relief against commissioners' court.

In view of discretion vested in commissioners' court by statute to expend money from sale of road bonds, every reasonable inference attaches to its action and must be negatived by petition for injunctive relief.

**4. Highways ☞130½, New, vol. 12A Key-No. Series—Commissioners' court not controllable by injunction except for fraud or gross indiscretion.**

Discretion in expending money from road bonds being vested in commissioners' court by statutes, their action is not controllable by injunction except for clear showing of fraud or gross indiscretion.

**5. Highways ☞130½, New, vol. 12A Key-No. Series—General allegations of fraud of commissioners' court insufficient to warrant injunctive relief.**

In suit to restrain commissioner's court from expending money on certain highway, as threatened, general sweeping allegations of fraud and bad-faith are not sufficient basis for relief sought.

**6. Injunction ☞76 — Specific allegations of fraud of county judge and one commissioner insufficient to warrant injunction.**

In suit to enjoin action of commissioners' court, specific allegations of fraud on part of county judge and one commissioner are insufficient to warrant relief, where of four commissioners vote of majority of three is determinative and county judge votes only in case of tie.

**7. Highways ☞130½, New, vol. 12A Key-No. Series—That it would be more expedient to improve other highway no ground for injunction.**

Fact that highway, which commissioners' court is expending money to improve, is rougher, longer, and accommodates fewer tax-paying voters than would another highway, is not sufficient ground for restraining such expenditure.

Appeal from District Court, Jack County; F. O. McKinsey, Judge.

Suit by W. J. Cannon and others against John D. McComb, County Judge of Jack County, and others. From an order dismissing the cause, plaintiffs appeal. Affirmed.

Wantland, Dickey & Glasgow, of Henrietta, for appellants.

J. P. Simpson, Co. Atty., and John D. McComb, both of Jacksboro, for appellees county judge and county commissioners.

Hood & Shadle, of Weatherford, and Lewis Johnson, of Jacksboro, for other appellees.

DUNKLIN, J. The commissioners' court of Jack county issued and sold $400,000 of its public road bonds, which were issued in obedience to an election held by the tax-paying voters of that county for the purpose of constructing, maintaining and operating macadamized, gravel, or paved roads or turnpikes, or in aid thereof, as authorized by the statutes. All the proceedings which culminated in the issuance and sale of the bonds were regular and in accordance with statutory provisions applicable thereto.

This suit was instituted by W. J. Cannon and some 29 other tax-paying voters of the county against John D. McComb, county judge of Jack county, E. W. Whitaker, J.

M. Johnson, A. B. Kuykendall, and J. D. Gillespie, county commissioners of said county, to restrain the defendants from expending any part of the proceeds of said bonds upon a certain highway running in a northwesterly direction from the town of Jacksboro, as, according to allegations in the petition, the defendants were threatening to do. It was alleged that there was a well-established public road or highway, known as highway No. 25, running north from the town of Jacksboro to the Clay county line; while the road running in a northwesterly direction, and which the defendants were threatening to improve with the bond money, intersects one of the boundary lines of Archer county. It was further alleged that the distance from Jacksboro to the Archer county line over the road last mentioned was greater by about 13 miles than the distance from Jacksboro to the Clay county line over highway No. 25; that it will cost $180,000 more to improve that road than it will cost to improve highway No. 25, by reason of the further fact that the country traversed is more hilly and in some places marshy; and that the country contiguous to highway No. 25 is much more thickly settled, and therefore more of the citizens will be accommodated by the improvement of that highway than by the improvement of the other proposed highway.

The petition contained general allegations to the effect that the property tax-paying voters in the northern part of Jack county voted for the bond issue under the belief and with the intention that highway No. 25 would be improved with the proceeds of the sale of said bonds, and that they were so induced to believe by the defendants that it was their intention so to do. It was further alleged that the county judge and county attorney and Robert Dennis, editor of the Jacksboro Gazette, constituted themselves a publicity committee to give the voters of Jack county information with reference to the bond issue and roads to be improved; that the said committee caused to be printed, published, and distributed to the taxpayers of the county a number of articles relating to the location of the roads, and at no time and in no way did the articles disclose that there was to be any change of any designated and then existing highway of Jack county; that the acts and representations of said publicity committee were sanctioned by the defendants, who fraudulently concealed from the voters of the county their intention to improve the proposed road running in a northwesterly direction rather than highway No. 25.

It was further alleged that Hon. J. P. Simpson, county attorney, made various speeches to the voters prior to the election on the bond issue, in which he represented, in effect, that highway No. 25 would be one of the roads to be improved with the pro-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ceeds of the bonds, and that said representations were made with the sanction of the defendants for the purpose of preventing the voters from knowing their intention to improve the proposed road instead of highway No. 25, as they are now fraudulently, capriciously, arbitrarily, and in bad faith threatening and attempting to do.

It was further alleged, in general terms, that all of the defendants were prompted by motives of selfish and personal gain. But the only specific allegation of fraudulent motives on the part of the defendants consisted of allegations to the effect that the father of the county judge owned a large body of land on or near the road which it was alleged the defendants were threatening to improve, which would be materially enhanced by the construction of that road, and in which land the county judge had an expectancy of estate and therefore a personal benefit to be derived by the improvement of that road. The other specific allegation of fraud consisted of a charge that the defendant Whitaker had agreed with the three other county commissioners to improve the said road running in a northwesterly direction from Jacksboro rather than highway No. 25, in consideration of an agreement with him by said three other commissioners to route another road to be improved so as to run through the vicinity in which said Whitaker owned lands.

It was further charged that the county judge used his influence with the state highway commission to secure aid from the state and federal government on the proposed route and represented to that commission that aid was not desired from the county for the improvement of highway No. 25. While the threatened action of the commissioners is designated in the petition as a change of highway No. 25 so as to run in a northwesterly direction, there is no specific allegation that the commissioners had voted to abandon highway No. 25 in order to make it run in a northwesterly direction over the proposed route. Indeed, we think it may be reasonably inferred from the allegations in the petition that no such change has been decided upon, and that highway No. 25 would continue as one of the public roads, but would not be improved with the proceeds of the bond issue.

Upon the filing of the plaintiffs' petition, the judge of the district court granted the temporary writ of injunction prayed for in their petition. Thereafter plaintiffs filed an amended petition. The defendants filed an answer containing general and specific denials of fraud and improper motives alleged in plaintiffs' petition. The answer also contained a general demurrer and numerous special exceptions which challenged the sufficiency of the petition to show plaintiffs entitled to the injunctive relief prayed for.

John W. Carter and some 45 other citizens, who alleged they were property taxpaying voters of Jack county, filed a plea of intervention challenging plaintiffs' right to the relief prayed for by them, and insisted that the defendants be permitted to proceed to improve the proposed road running in a northwesterly direction from Jacksboro rather than highway No. 25. That plea likewise controverted substantially all the allegations of fact alleged by the plaintiffs, and specifically alleged facts which, if proven to be true, would show that the proposed road would be more practicable and desirable than highway No. 25 and would serve more of the citizens than the other road.

Jack county, acting by Hon. J. P. Simpson, its county attorney, likewise filed a plea of intervention, adopted the answer filed by the defendants and prayed that plaintiffs be denied the relief sought by them.

Thereafter the cause came on for hearing at a special term of the district court, all parties appearing by counsel. Upon that hearing all the exceptions of the defendants and interveners to the plaintiffs' petition were sustained and the cause dismissed at the cost of plaintiffs. This appeal is prosecuted by plaintiffs from that order.

[1] Separate assignments of error are addressed to the action of the court in sustaining each of the exceptions presented to plaintiffs' petition, but we shall consider only such exceptions as can be given the effect of a general demurrer, which is the only question we shall discuss. Nor can the allegations of fact contained in the defendants' answer and in the pleas of intervention be looked to in aid of the general demurrer or as supporting the action of the trial court in denying injunctive relief, since those pleadings are not verified, while plaintiffs' petition was duly verified.

Appellants rely upon two decisions, namely, Grayson Co. v. Harrell (Tex. Civ. App.) 202 S. W. 163; Board of Permanent Road Com'rs of Hunt County v. Johnson (Tex. Civ. App.) 231 S. W. 859. In each of those cases a temporary writ of injunction was granted restraining the commissioners' court from expending public funds for the improvement of one road in preference to another, but in each case the injunction was dissolved by the Court of Civil Appeals. However, those decisions are cited as impliedly holding that if the commissioners, who were charged with the duty of expending the funds for the improvement of roads, were actuated by bad faith or fraud in selecting the route to be improved, then a case would be made out for injunctive relief against such a course. In discussing those decisions, attention is called to the fact that evidence was introduced upon the hearing, but that there was no evidence tending to show fraud or abuse of discretion on the part of the commissioners. It is insisted, in effect, that since the

petition in the present suit charged fraud and bad faith on the part of the defendants in the selection of the proposed road to be improved, those allegations should be taken as true as against a general demurrer.

[2] The petition in the present suit contained no allegations of any order of the commissioners' court when the election for the issuance of the road bonds was ordered, specifying highway No. 25, or any other particular road, as one which would be improved by the proceeds of the sale of the bonds. On the contrary, the allegation in the plaintiffs' petition was that the proposition voted on at the election was for the purpose of determining "whether or not bonds of said Jack county, Tex., in the amount of $400,000 should be issued for the purpose of constructing and maintaining graveled, macadamized, or hard-surfaced roads within and for Jack county, Tex., and levying a tax in payment thereof." Under such circumstances, we think it well settled that the alleged representations made by the publicity committee for campaign purposes, to the effect that the proceeds of the bonds would be used for the purpose of improving highway No. 25, would not, of themselves, afford any basis for the relief sought. Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160, and authorities there cited, including Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1116; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 674, 960.

[3, 4] The discretion to expend the money derived from the sale of the road bonds was vested in the commissioners' court by statutes, and in order to warrant the granting of the injunction to control their action it was necessary that the petition should contain specific allegations of all the material and essential facts necessary to be shown; and the facts so alleged should be sufficiently certain to negative every reasonable inference arising from the facts stated from which it might be deduced that plaintiffs were not entitled to the relief sought. Gillis v. Rosenheimer, 64 Tex. 243. It is a familiar rule that, in the absence of fraud or gross abuse of discretion, injunction will not lie to control such a body as a commissioners' court in the exercise of discretionary powers vested in them by the statutes. 32 C. J. p. 250, 252, 253; Stuckey v. Jones (Tex. Civ. App.) 240 S. W. 565. And especially if public interests are involved the showing of fraud must be clear. 2 High on Injunction, §§ 1311, 1256, 1262.

[5-7] As noted, the general sweeping allegations that the defendants were acting fraudulently and in bad faith were too vague of themselves to serve as a proper basis for the relief sought; especially since those general allegations were limited by the specific allegations of fraud on the part of the county judge and commissioner Whitaker. Brown v. Mitchell, 75 Tex. 9. There were four commissioners and a vote of a majority of three of them would determine the action of the commissioners in the selection of the roads to be improved. The county judge could only vote in case of a tie vote of the commissioners. The petition contains no allegation that the county judge had cast, or was threatening to cast, any vote at all upon the question in issue. It inferentially appears from the petition that three of the commissioners were in favor of improving the northwesterly road, and there is no specific allegation that they were influenced by any motive of personal interest, bribery, or favoritism to any individual. And even though Whitaker might be influenced by a desire for personal gain in having the other three commissioners to agree to run another road near his property, that motive would not, if acted on, change the results, since the other three commissioners could determine the matter, even though Whitaker's vote was contrary to theirs. Even though it could be said that the agreement, on the part of the other three commissioners to locate another road in close proximity to Whitaker's property in consideration of Whitaker's agreement to vote for the improvement of the road in controversy, might be ground for restraining the proposed location of the other road, that fact would not of itself vitiate the vote of those three commissioners to the improvement of the proposed road. The mere fact that the proposed road is over a rougher country and of longer distance than highway No. 25, and therefore more expensive to improve, coupled with the further fact that more of the tax-paying voters would be accommodated by the construction of highway No. 25, would not furnish sufficient ground for control by a writ of injunction of the commissioners' court in the exercise of their discretion in the expenditure of the proceeds of the bonds, in the absence of sufficient facts to show that they were acting fraudulently or in bad faith, and not in the interest of the public at large, even though it could be said that such proposed action showed poor judgment. To hold otherwise would be to substitute the discretion of the district court for that of the commissioners' court, in whom that discretion was vested by statute. See Tippett v. Gates (Tex. Civ. App.) 223 S. W. 702, in addition to authorities above cited.

Accordingly, we are of the opinion that the trial court did not err in sustaining the general demurrer to plaintiffs' petition, and the judgment is therefore affirmed.