Robert M. KELLEY, Jr., Plaintiff,

v.

DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION and Michael Cebrick, in his official capacity as Temporary Chairman of the Delaware Alcoholic Beverage Control Commission, Defendants.

Superior Court of Delaware, New Castle County.

Submitted July 23, 1980.
Decided July 29, 1980.

Gary A. Bryde (argued), of Wilson & Whittington, Wilmington, for plaintiff.

Robert W. Willard (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, for defendants.

O'HARA, Judge.

Plaintiff seeks a writ of mandamus to compel the Delaware Alcoholic Beverage Control Commission ("Commission") to consider his application for a license to sell alcoholic beverages in a retail establishment for off–premises consumption and to grant him a hearing in connection therewith.

Plaintiff was nearing completion of his license application on May 29, 1980 when the Commission declared a moratorium on the issuance of new package store licenses. Apparently, this decision was made without prior public notice that the Commission was considering such a drastic step. The Commission presently intends that the moratorium will terminate at the end of 1980. Despite the moratorium, plaintiff, who had

already gone to considerable trouble and expense, submitted his license application on June 2, 1980. The Commission promptly advised plaintiff that his application would not be considered during the moratorium. On June 24, 1980, plaintiff filed his complaint in this Court.

The Commission's decision to declare a moratorium was triggered by a March 3, 1980 decision of the United States Supreme Court declaring California's wine pricing system in violation of federal antitrust laws. *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). The Commission was concerned about similarities between the California scheme and Delaware's liquor pricing system under the Commission's Rule 39.[1] Consequently, the Commission voted, on March 20, 1980, to suspend enforcement of Rule 39.

The Commission, however, was concerned about the impact of sudden free price competition in the retail liquor business. It believed that such competition might lead to gross abuses, "such as short term 'price wars' to eliminate small businessmen, increased illegal sales (to minors, for example) to offset reduced prices, the emergence of 'black market' wholesalers, and so on." (July 7, 1980 memorandum of the Commission). The only "facts" relied upon by the Commission to support its belief concerning the potential for abuse in a free competition retail liquor industry were: 1) statistics compiled by the Distilled Spirits Council of the United States which purportedly show

that Delaware has more package stores *per capita* than the "average state"; and 2) testimony of retail dealers who attended a public hearing in May, 1980, who expressed concern that a gangster element might take over as supposedly occurred in New York State. This latter "fact" was totally unsubstantiated. On the basis of the above described assumptions, the Commission determined that a moratorium on the issuance of package store licenses while it undertook extensive revision of its regulations to meet the needs of a free competition system would be in the public interest.

Mandamus is an extraordinary writ and will issue only where certain conditions are met. The writ will not issue where there is another adequate legal remedy. *Hastings v. Henry*, Del.Super., 40 A. 1125 (1894); 2 *Woolley on Delaware Practice*, Section 1655 (1906). This prerequisite is met in the instant case, as the Commission's refusal to act on the merits of plaintiff's application has effectively insulated that determination from appellate review under 4 *Del.C.* § 541(c).

The exclusive function of mandamus is to compel one who has a duty to act to perform that duty in accordance with the law. 2 *Woolley, supra*, Section 1653; *see also Capital Educators Association v. Camper*, Del.Ch., 320 A.2d 782 (1974). Moreover, if the complaining party's right to the performance of an official duty is doubtful and not clearly established, or if the official duty sought to be compelled is discretionary rather than ministerial in nature, manda-

---

1. Rule 39 provides:

   "The word 'distributor' shall be deemed to include an importer, wholesaler, or other person who supplies or furnishes alcoholic liquors to licensees for resale.

   "The word 'licensee' shall be deemed to include all persons, firms, or corporations holding licenses under the Commission for the sale of alcoholic liquors not for consumption on the premises where sold.

   "To prevent unfair and discriminatory practices in relation to the sale of alcoholic beverages not for consumption on the premises where sold, every licensee shall enter into a written agreement with his distributor by which he shall bind himself not to sell or offer for sale alcoholic liquors not for con-

   sumption on the premises where sold below the prices stipulated by the distributor, and, as, from time to time, filed with the Commission, nor make any refund, discount, concession, gift, or joint sale with any other article, or kind, brand or quality of alcoholic liquor, nor employ any other device, which, directly or indirectly, will result in a reduction of the price stipulated by the distributor.

   "Every licensee shall file with his application for license, or renewal of license, an affidavit stating that the licensee has entered into such agreement with each of his distributors. Such affidavit shall be made by the individual, a member of a firm, or President of a corporation, applying for the license."

mus will not issue. 2 *Woolley, supra,* Section 1655; *Capital Educators Association v. Camper,* above; High, *Extraordinary Legal Remedies,* § 9 (1874). With these controlling principles in mind, the Court will now turn to the ultimate questions presented in this controversy, *i. e.,* whether the Commission should be compelled to consider plaintiff's application on its merits and, if so, whether the Commission should further be compelled to grant plaintiff a hearing in connection therewith.

■■■ The Court has no hesitancy in answering the first question affirmatively. Plaintiff clearly has the right to apply for a license to resell alcoholic liquors. 4 *Del.C.* § 522(b). In regard to the Commission's duty once such application has been filed, 4 *Del.C.* § 541(a) states:

"The Commission shall examine all applications for license as promptly as possible, and if it appears that any application should not be granted, the Commission shall so notify the applicant, stating the cause for refusal."

It is clear to the Court that this statute requires the Commission to undertake meritorious consideration of each license application "as promptly as possible" and to either grant or deny the applicant's request. Moreover, the Commission's decisions must be based on proper evidence set forth in a record which will be subject to appellate review in this Court pursuant to § 541(c). *Demarie v. Delaware Alcoholic Beverage Con. Com'n,* Del.Supr., 143 A.2d 119 (1958). By its moratorium decision, the Commission has effectively circumvented all three of these express statutory provisions.

Counsel for the Commission concedes that Title 4 does not expressly grant the Commission the power to declare a blanket moratorium on considering license applications. Additionally, there is nothing in Title 4 expressly indicating that the Commission has discretion to consider some such applications but to refuse to consider or act on others. Further, even though the moratorium decision involved basic policy questions, which have not been statutorily addressed, the Commission has not sought legislative approval for its action. In other words, the Commission does not rely upon any express grant of power to justify the moratorium decision. Rather, it argues that this power is implicit in the broad grant of authority found in 4 *Del.C.* § 304(a)(2).

In the policy–making arena, both the courts and the Legislature have declared that the Commission has no implicit authority to act. Thus, it has been held that "[t]he Commission under the Act in the true sense has no power to initiate policy." *Wilmington Country Club v. Delaware Liquor Com'n,* Del.Super., 91 A.2d 250 (1952). Even more emphatic is the following declaration by the Legislature:

"The powers of the Commission are *limited only to those powers expressly given* in Title 4 of the Delaware Code and *cannot be extended beyond a strict construction thereof,* except with the approval of the General Assembly." 59 Del. Laws, c. 107, section 68. (Emphasis added).

Since § 541 expressly requires the Commission to give meritorious consideration to all license applications and to render prompt determinations thereon, and since it has not expressly been granted the authority to suspend its duties under § 541, it necessarily follows that the Commission's refusal to so act on plaintiff's application was unlawful. Therefore, plaintiff is entitled to have a writ of mandamus issue to compel the Commission to consider and act upon the merits of his application.

■■ However, because of the strict limitations on the issuance of mandamus, a different result is required on the question of whether the Commission should be compelled to grant a hearing. As indicated above, mandamus is proper to enforce only a clearly established right. Given that from 1966 until June 1980 the Commission has held hearings on every new license application submitted, plaintiff's claim of a right to such a hearing is not without merit. However, the court in *Demarie v. Delaware Alcoholic Beverage Con. Com'n,* above, held that there is no general right to a hearing in license application cases under Title 4. Whether a different conclusion should now

be reached due to the Commission's custom and practice of granting hearings in such cases or due to the passage of the Administrative Procedures Act, 29 *Del.C.* § 6401 *et seq.*, is not sufficiently clear to warrant relief by mandamus at the present time. However, if the Commission should refuse to grant a hearing and plaintiff preserves his objection on the record, this issue may be squarely presented for appellate review in the future.

In accordance with the foregoing analysis, the Court has determined that mandamus should issue to compel the Commission to consider plaintiff's license application on its merits and to render a decision thereon as soon as is practically possible.

IT IS SO ORDERED.